CITY OF GREENVILLE *v.* ADDIE HARVIE.

MUNICIPALITIES.   *Special improvements and assessments.   Expense.   Abutting owner.   Code 1892, §§ 3011, 3012.*

A "special assessment" for the cost of constructing a sidewalk is not chargeable upon abutting property, under § 3012, code 1892, when the resolution of the municipal uathorities declaring it necessary, etc., under § 3011, in relation to "special improvements," gives notice that the walks will be constructed by the city, and indicates in no way that abutting property owners are to bear any part of the expense.

[Whitfield, C. J., concurred in the conclusion reached by a majority of the court on the ground of want of sufficient notice, but dissented from the view expressed in the opinion of the court, being of opinion that the term "special assessment" always imported, when used in connection with special street improvements, that the owners of the abutting property should bear the expense of the improvement; and that since the resolution in question was passed in pursuance of § 3011, code 1892, regarded as having reference only to special improvements, the cost of which are chargeable against abutting property, it must be construed as imposing the whole cost upon the owners of such property. *Nugent* v. *City of Jackson,* 72 Miss., 1040, cited.]

FROM the chancery court of Washington county.

HON. J. McC. KIMBROUGH, Chancellor.

The city of Greenville, appellant, was complainant, and Mrs. Harvie, appellee, defendant in the court below. The facts are stated in the opinion of the court. The nature of the code provisions reviewed in this case fully appears in the opinion of Chief Justice Whitfield.

*William Griffin,* for appellant.

The sidewalk ordinances were prepared under the authority of *Nugent* v. *City of Jackson,* 72 Miss., 1040, and are identical

with those construed in that case, which should be conclusive of this.

*Thomas & Rose,* for appellee.

Complainant did not allege and prove a strict compliance with every provision of the code sections, and otherwise the city had no authority to act. This court has uniformly held that such a body as the city council of Greenville is a court of limited jurisdiction. *Coleman* v. *Bolivar County,* 71 Miss., 832; *Lester* v. *Miller,* 76 Miss., 309.

Before the council could proceed in this matter there was a fact for it to judicially ascertain, to wit: The necessity for the improvement. After this fact had been ascertained, it should have judicially declared the ascertainment of the fact, by resolution, and the resolution should have been published as an ordinance. The resolution should have shown, moreover, that the abutting property owners were to bear the expense.

The bill alleges in the first paragraph that the ordinance was passed requiring property owners to build sidewalks, but does not allege, and the record does not show, that the board did, before or after passing the ordinance, ascertain judicially the necessity for this improvement, and declare by resolution such improvement, describing it necessary, and publish the resolution; without this the board was without power or authority to act, and the demurrer was properly sustained. The court will readily see the necessity for the adoption and publication of the resolution as provided for.

Under the scheme deducible from the section above cited, the majority of the resident owners of property on said street, etc., can put a stop to the improvement by filing with the court their protest. Suppose no resolution is published, what notice have they of the contemplated improvement, and how is the majority to get into court? Certainly the court intended to hold in *Nugent* v. *Jackson,* 72 Miss., 1040, that unless the law had provided for proper notice, it would have been unconstitutional in that there would be no due process of law.

The notice served by the street commissioner contains nothing about the necessity for the improvement, and there is absolutely nothing in the record to indicate that the city council of Greenville at any time made an order directing the street commissioner to give such notice, and unless such an order was adopted by the council, and appears on its minutes, the street commissioner had no authority to act, and the notice, if it was proper in form, and was a proper notice otherwise, would be void. And without proper notice to defendant, the complainant had no power or authority to act in the premises, and the court below properly sustained the demurrer, and its decision should be affirmed.

TERRAL, J., delivered the opinion of the court.

It appears from the record in this case that appellee, a citizen of Greenville, owned a lot in said city, namely, lot 15, on the west side of Walnut street, between Main street and Central avenue; that on the 10th day of October, 1895, the city council of Greenville, in pursuance of § 3011, ann. code 1892, by resolution declared that "the hereinafter mentioned and described improvements and repairs of sidewalks in said city are necessary, and to this end notice is hereby given that the city council will cause to be constructed or repaired the sidewalks of said city, and that said improvements or repairs shall be made on Walnut street, on west side, from Main street to Central, of brick or concrete, nine feet wide." In February, 1897, the street supervisor of said city notified Mrs. Harvie to build said sidewalk. Thereafter, in 1898, Mrs. Harvie having declined to make said sidewalk, the city constructed the same at a cost of $120.25. Thereafter, in August, 1899, the city council of Greenville ordained that said lot 15 be assessed for said $120.25, and declared a lien on said lot to exist in favor of said city for said sum of money, and directed the city attorney to enforce said lien for the collection of said debt.

The city, setting out in its bill the above facts, impleaded Mrs.
Harvie in the chancery court of Washington county, and 'de-
manded a decree for said $120.25, and for a condemnation of
said lot 15 for the satisfaction thereof. Mrs. Harvie demurred
to said bill. The demurrer was sustained, and the city ap-
pealed.

The objection we find to the proceeding of the city of Green-
ville is, that the city council did not specify, in advance of the
work being done, that the owners of the lots abutting on Walnut
street should bear the whole expense of building said sidewalk.
In fact, to our apprehension of the matter, the city, by its
ordinance, indicated its purpose to construct this sidewalk at
the sole expense of the city. In *Nugent v. City of Jackon,* 72
Miss., 1040 (18 So. Rep., 493), the ordinance there upheld
expressly declared that the owners of the property abutting on
the street should bear the entire expense of building the side-
walk. No such purpose, as we think, was inferable from the
ordinance in this case. On the contrary, we think the fair
inference is that the city of Greenville will make the sidewalk
upon its sole credit. If the terms "special improvements" of
themselves import that the owners of abutting lots shall bear
the whole expense of building sidewalks, then the question is
settled. We know of no dictionary or book of definitions of
any sort that defines the phrase "special improvements" as
meaning that the entire expense of making sidewalks shall be
borne by the proprietors of lots along which they are con-
structed. The contrary is manifest from 2 Dill. Mun. Corp.,
sec. 752 *et seq.*; Cooley, Tax'n (2d ed.), 637 *et seq.* If the
tax is to be levied upon abutting lot owners, we think that it
should be so determined at the very beginning of the proceed-
ing, so that the property owners may have opportunity to pro-
test against the improvement, and so protect themselves against
the expense. They would have no occasion, or at least reason,
to protest if the cost was to be borne only in part by them-
selves. For these reasons Mr. Justice Calhoon and I are of

opinion that the decree of the court below should be affirmed, not merely because five days' notice is not averred to have been given, for evidently that was not the ground of the decree, but because the ordinance of October 10, 1895, is fatally and irremediably defective.

*Affirmed.*

WHITFIELD, C. J. (specially concurring).

I cannot concur in the view that the ordinance of October 10, 1895, is fatally defective on the ground set forth in the opinion of the court. I think it is a valid ordinance, and, so far as the point before us is concerned, the same with the ordinance in *Nugent* v. *City of Jackson*, 72 Miss., 1040 (18 So. Rep., 493), set out at pages 1042, 1043, 72 Miss., and pages 493, 494, 18 So. Rep. The assessment here is the usual special assessment, as it was there. We said in that case, at page 1050, 72 Miss., and page 494, 18 So. Rep.: "The phrase 'special assessment' has a well-ascertained meaning in legislation on this subject-matter, and means, as shown by the context in which it stands, 'assessment specially' imposed for the construction and maintenance of sidewalks"—the usual local assessment for such purposes. The argument that the Jackson "special assessment" did not have this meaning was made and disallowed in that case. See page 1047, 72 Miss., and page 493, 18 So. Rep. The objection my brethren find to the validity of the ordinance rests, as I understand their view, on the grounds that this ordinance shows on its face that the expense of repairing these sidewalks was to be borne by the city, and not by the abutting owners; and that the term "special assessment," as used in these sections and this ordinance, does not import, *ex vi termini,* that the expense was to be borne by the abutting property owners whose property was benefited. I think, when used in this connection, the term "special assessment" does always so import, *ex vi termini,* and has always in this connection that meaning, thoroughly established in the law. 2 Elliott,

Roads & S., secs. 542, 543; 24 Am. & Eng. Enc. Law, p. 65. And I also think that this ordinance shows itself that abutting owners should make and pay for the "special improvement." Let us see. The ordinance of October 10, 1895, recites, after the preamble: "Therefore be it resolved and ordained . . . that in pursuance of § 3011 of the annotated code of 1892 . . . the said city council declare," etc. Now turn to § 3011. It provides for "special improvements" when "the general improvement fund" provided for the whole city is not sufficient to pay for general improvements and the "special improvement," and then specially declares that, if the resident property owners do not protest, as provided, within twenty days after the passage of the resolution, the board shall have power to cause such improvement to be made, and to contract therefor, and to levy the "special assessment" of taxes provided for in the next section (§ 3012). Turn now to sec. 3012, and it expressly declares: "If the owner of the property fail to make the special improvement within twenty days after the ordinance becomes operative, then the street commissioner shall, upon the order of the board, after giving five days' notice to the owner or occupant of each piece of the property to be assessed, or, in case of unoccupied property, by posting a written notice thereon for such time, of the necessity therefor, make the repairs or construct the improvement, or cause it to be done, keeping an account of the cost thereof, and reporting the same to the board at its next regular meeting thereafter for assessment; and each lot or piece of ground abutting on said street, alley, lane, avenue, or sidewalk, or part thereof, shall be liable, and bound by a lien paramount to all other liens, state and county taxes excepted, for the cost of the improvement or repairs made along or in front of such lot or piece of ground as reported to and approved by the board, with ten per centum interest thereon for thirty days after its approval, which may be enforced in the chancery court after ten days'

notice to the owner, if a resident, or to the occupant of the property, or agent, if the owner be nonresident; and, when so enforced, a solicitor's fee, to be fixed by the court, shall be taxed in the costs in the complainant's favor." Here is an express declaration of legislative purpose in these two sections that the abutting owner, whose property is to be benefited, shall make the improvement and pay for it, after ordinance, notice, etc., and that, if he fails to do it within twenty days after the ordinance becomes operative, then five days' further notice of the necessity for making it shall be given, and then if he does not do it the street commissioner shall do it, keeping account of the cost, report it to the next meeting of the board, and thereupon a lien is fixed on the lots for the cost, enforceable in chancery. I think that is the scheme marked out by the law, and hence that the ordinance of October 10, 1895, which refers to sec. 3011, which refers to sec. 3012, is to be read as if these sections were written into it, and, so read, itself declares the abutting owner is to make and pay for the improvement, and that if he does not do it the city does it at his expense. And the ordinance of August 1, 1899, shows that it was passed because "the owner of said lot had failed to make said improvement in pursuance of said ordinance, after notice," etc. I think the Nugent case controls and settles this one on these propositions. I only add that I do not understand the demurrer to present the view taken by my brethren. But I do not think the five days' notice required by law, and explained in the Nugent case, is clearly given, as it ought to be in proceedings in derogation of the common law. Paragraph 4 of the bill says "notice was duly given," but the notice itself is attached as Exhibit A, and it is too vague and indefinite. It does not show, in the language of sec. 3012, regulating this notice, any notice "of the necessity of the work," nor does it show when it was served upon Mrs. Harvie. For that reason, and that reason alone, I concur in the affirmance of the decree.

In my view, however, amendment should be allowed as to this five days' notice, if the fact be that proper notice was given, and the appellant could then, on the remanding of the case, and the making of the amendment, proceed to enforce its lien.