| 91 | 429 |
| f92 | 316 |
| d92 | 320 |

EDWARDS HOUSE COMPANY *v.* CITY OF JACKSON.

[45 South., 14.]

1. MUNICIPALITIES. *Improvements. Code* 1892, §§ 3011, 3012 (*Code* 1906, §§ 3411, 3412). *Resolution. Particularity of description.*

Under Code 1892, §§ 3011, 3012, authorizing municipalities to adjudge improvements necessary with a view to laying special assessments therefor, an initiatory resolution adjudging the paving of certain streets to be necessary is not void for failure to specify the material to be used in paving, where specific plans and specifications for the work were adopted by another resolution passed shortly thereafter.

2. SAME. *Recitals of statutes. Effect.*

A resolution of a municipal board reciting that the municipality is proceeding under a designated code section is the exact equivalent of a resolution incorporating into itself the language of the section.

3. SAME. *Special assessments.*

Under Code 1892, §§ 3011, 3012, empowering municipalities in the premises, special assessments designatedly insufficient to pay the entire cost of the improvement may be levied and the municipality may issue its bonds to pay the balance, although the persons and property specially assessed will be, as others, taxed to pay the bonds.

4. SAME. *Taxpayers's failure to construct improvement. Methods of procedure.*

Under Code 1892, § 3012, authorizing a municipality in case the abutting owner fails to make a street improvement within a prescribed time, to have it constructed by the street commissioner or by contract, it is immaterial to the rights of the owner which method is adopted, if he be charged only with the actual cost of the work.

5. SAME. *Municipal bonds. Code* 1892, §§ 3011, 3012, 3014, 3015, 3016 (*Code* 1906, §§ 3411, 3412, 3415, 3416). *Concurrent exercise of two powers.*

Special assessments may be laid, under Code 1892, §§ 3011, 3012, to raise a fund for paying a part of the costs of an improvement

and at the same time bonds may be issued under Code 1892, §§ 3014, 3015, 3016, to pay the balance.

6. Same. · *Constitutional law.   Constitution* 1890, §§ 17, 112.  *Special assessments.   Front foot rule.   Apportionment of costs.*

Code 1892, §§ 3011, 3012, empowering municipalities to levy special assessments for street improvements and establishing the " front foot rule " for apportioning the costs are constitutional, they do not violate:—

(*a*) Constitution 1890, § 17, prohibiting the taking or damaging of private property for public use except on due compensation, etc., since such an improvement is neither a taking nor a damaging of private property for public use; nor

(*b*) Constitution 1890, § 112, providing that taxation shall be equal and uniform, special assessments for public improvements not being within the provision.

7. Same.  *Failure to protest in time.*

An abutting property owner, to whom opportunity, under Code 1892, § 3012, was given to protest against the improvement of a street before the work was begun, cannot object for the first time after the improvement is completed and the benefits have accrued.

From the chancery court of, first district, Hinds county.

Hon. G. Garland Lyell, Chancellor.

The city of Jackson, appellee, was complainant in the court below; the Edwards House Company, a hotel corporation, appellant, was defendant there.

From a decree overruling its demurrer to complainant's bill, defendant appealed to the supreme court.   The facts are fully stated in the opinion of the court.

*Green & Green,* for appellant.

To the resolution or ordinance of January 2, 1902, there are divers fatal objections:

(1) It is required by this § 3011, Code 1892, that:  " The board shall by resolution declare such work or improvement, describing it, necessary."

We submit that herein this resolution is fatally defective.

Let it be noted that the requirement of this resolution is that there shall be notice, so that if any party, who has a right to object, may do so.  Under this section it is a condition precedent to the right in the city to proceed under this ordinance, and before any step is taken thereunder, the resolution, which is required to " describe the improvement " shall be published for a period of three weeks.  This is a condition precedent, and if, in response to the said notice thus given a majority shall protest, in and of itself, the right to make the improvement is thereby defeated.  Now, the object being notice — to enable those who have a right to know — those whose consent thus given is an essential prerequisite to the doing of the work — that they and each of them should know, and know accurately, what the improvement is to be, and thus its probable cost, and by whom the said is to be paid.  It is elementary that when an election is presented to a party, that he has the right to demand the knowledge of everything necessary to enable him to make the choice.

This ordinance did not declare what portion of the streets should be paved nor whether they should be paved with brick, stone, or blocks; and did not specify that any portion of the cost should be imposed upon the abutting property owners.  As said in *Nugent* v. *City,* 72 Miss., 1052, construing § 3011, " That when any improvement which requires ' unusual outlay and costs in excess of the general improvement fund ' is deemed ' necessary ' by the mayor and board of aldermen, they shall so declare by resolution, describing the improvement."

To describe is defined thus in 14 Cyc., 226:  " To delineate or mark the form or figure of; trace out; outline."

And in 9 Am. & Eng. Law (2d ed.), 402, it is said:  " Describe — To describe means to define by properties or accidents; to represent by words or other signs; to give an account; to relate."  " Description — Description is defined as (1) A delineation or account of a particular subject by the recital of its characteristics, accidents or qualities," etc.

And in the notes the following appear: " 3 Black's Law Dict., quoted in *McGowan* v. *Maclaw*, 16 Mont., 234, ' Every acknowledged dictionary in the English language would sanction as an accurate definition of the word description: " a representation that gives to another a view of the thing intended to be represented." *In re Fitzpatrick*, 19 L. R. Ir., 210.' "

See also the other cases cited in these notes.

If there is one thing this ordinance does not do, it is to describe the improvement. True it says to pave the streets: — but consider what that may mean — it may be done with asphalt, with cobble stones, with brick, with chert, with wooden blocks and divers other things, all of different cost, and, therefore, of different expense to the abutting owner; and, hence, we insist that merely to state that " paving is necessary " without further specifications is not a compliance with the statute. This ordinance does not specify what dimensions are to be paid; nor does it give the width; nor the grade upon which the same is to be laid; nor whether all or only a part shall be paved; nor did it state anything whatever in regard to the car line as to who should do the paving therein. The specifications describing the improvement were not adopted by the Board until April 19, 1902, *infra.* When for the first time the owner could exercise his right to vote intelligently and then the right was barred.

(2) From the exhibits it appears that on January 7, 1902, at the same meeting, at which was passed the foregoing resolution ordinance this ordinance was also passed:

" An ordinance proposing to issue bonds to the amount of $100,000, with which to provide funds for paving Capitol and State, Pearl and President streets," and under this ordinance in accordance with § §, 3014, 3015 and 3016, Code, this $100,000 of bonds were issued, and floated, and are still outstanding, and that the purpose of issuing them was to pay for the paving of precisely the same streets as are described in the

first resolution or ordinance passed January, 1902, under § 3011.

This question is thus presented: When a resolution or ordinance declaring an improvement necessary is passed, which does not express that the improvement is to be at the expense of the abutting owner, and, contemporaneously, there is an ordinance passed providing for the issue of bonds under §§ 3014, 3015 and 3016, Code, to pay for this improvement, and in this condition of the record the time for objecting under § 3011 has passed before any expression of any expected local assessment therefor, can a valid local assessment be predicated thereof?

1. The abutting owner has only the time prescribed by 3011, to object to the improvement as an improvement, and unless the resolution of January 7, 1902, specifies that it is to be at his expense, he has the right to presume that it is to be done at the city's expense and by general taxation. *Greenville* v. *Harvie,* 79 Miss., 754, 756.

There the language was "the hereafter mentioned and described improvements and repairs of sidewalks in said city are necessary, and to this end notice is hereby given that the city council will cause to be constructed or repaired the sidewalks of said city, and that said improvements . . . of brick or concrete nine feet wide," p. 756, and says the court, "The objection we find to the proceeding of the city of Greenville, that the city council did not specify, in advance of the work being done, that the owners of the lots abutting on Walnut street should bear the whole expense of building said sidewalk. In fact, to our apprehension of the matter, the city, by its ordinance, indicated its purpose to construct this sidewalk at the sole expense of the city," p. 757.

But here the city contemporaneously provided for the issuance of bonds, to be paid by general taxation, to pay for this improvement, and, hence, *Greenville* v. *Harvie, supra,* denies all power thereafter to impose a local assessment.

When there has been a proceeding, in accordance with §§ 3014, 3015 and 3016, in issuing bonds before the assessment is made, as appears from the ordinances made exhibits, is it lawful to make a special assessment upon the abutting property owners when the city has paid for the work with bonds under §§ 3014, 3015 and 3016? When, according to the showing, the amount realized from the assessment will not be used to pay for the making of the improvement, the only lawful purpose for which it could be used, but will be placed in the city treasury. The city must apply to assessment to the making of the improvement, and yet, under the very condition brought about by the city's own acts, it is impossible to do so.

The rights given under § 3011, and those given under §§ 3014, 3015 and 3016 are exclusive one of the other, and if the city pursues the remedy under the one to accomplish the end, by so doing it precludes itself, absolutely, from using the other.

Wherein consider:

(a) Under § 3014, it is provided: " The mayor and board of aldermen, for the purpose of raising money for . . . paving streets may issue bonds." This is a grant of the sovereign right, wherefor a tax is to be imposed, and it is essential that a strict construction of the words be made, and unless it appears from them affirmatively that the power exists it is nonexistent. There is granted the right to issue bonds to pave the streets, and under § 3015, it is expressly provided: " The mayor and board of aldermen shall levy annually a special tax to be used exclusively in paying the interest on such bonds and the bonds maturing within one year, and providing a sinking fund for the redemption of the bonds issued." Whereas under § 3012 the assessment is to be upon the property in front of which the improvement is to be made, and is made to be enforced by a suit in the chancery court if the same is not paid, and this suit is given special facilities for the purpose of expediting the same. Now suppose there is an issue of

bonds to the extent of $100,000 by a city, and that for the payment of these bonds there is in accordance with the provisions of the law a special tax imposed each year during the twenty years which these particular bonds have to run, is it not evident under this provision that the property of the defendant will in the nature of things be taxed *ad valorem* to pay the bonds and interest thus accruing as part of the property within the limits of the city, and that, as such, it will contribute to the payment of the sum thus due. The bonds were voted for the purpose, as shown upon their faces, of paving identically the streets that were paved, and the same were allowed to be issued herefor, and are now, as shown by this record, outstanding and a charge upon the respondent's property.

Now turn to this alleged special assessment. The city has paid the contractor who did the paving — the funds so to do were derived from the sale of the bonds issued for the purpose of paving these identical streets, but the city is discharged of any liability to any contractor for and on that behalf, and, in addition, the city is in debt with its bonds outstanding therefor, which, as shown by the record, cannot be paid until after the expiration of the twenty years — that is, most of them — and, yet, while the city has paid for the improvement, and has paid for it by the issuance of bonds which must be paid — the Mayor and Aldermen are attempting to have the city levy a special assessment to pay that which is already provided for by the issuance of the bonds, and for which the property of all the citizens of the whole town are being taxed *ad valorem*. This would give the city $100,000 to spend as it sees fit, without any vote of the people as required, and to allow the city to levy *ad valorem* taxes, for the same amount.

Let it be noted that § 3014 grants the power of issuing bonds " for the purpose of raising money for paving "— that the object is specified and definite, and that to give rise to the right to issue bonds therefor it is essential that the money shall be raised for the purpose of paving — that is, for the purpose of

paying for the paving, and when this is done there arises a duty upon the part of the owner of the property to pay the tax that is to be levied in aid of this purpose — that is explicit, and yet, in addition to this, if the city's contention is correct, the owner of the property, who had thus come under one liability for paving should, at once, and contemporaneously come under another liability for the same thing under the guise of an alleged special assessment to raise money to do that which had already been done by the imposition of a tax upon the property of this respondent.   His property would come under a double liability:   (1) An *ad valorem* tax to pay the bonds and the interest — together with the other taxable property of the city, and (2) a liability for a special assessment, for exactly the same purposes.   This we submit is double taxation, and is a deprivation of property for public use made without first making compensation for the same.

Consider the fundamental rule announced everywhere that the laws will be so construed as not to impose double taxation, and yet in the instant case, if the law is capable of the construction here attempted to be given it, this most fundamental rule will be violated.

The provisions in regard to the special assessments are so framed that they afford ample protection to any one who relies for his pay on them for the same bears ten per cent interest after maturity, and contains a provision taxing a lawyer's fee into the bargain, and so it is that all costs and expenses are paid by the property that is improved, and the liability is made of the strictest kind.

In *Maybin* v. *Biloxi,* 77 Miss., 674, this court said: "It appears to us that the city of Biloxi had power to levy a tax upon all of the taxable property of the city to pave the streets of the city or any part of them, and we see nothing unjust in the exercise of this power in the present instance.   It seems to us not to be unreasonable that the paving of the streets in the heart of the business section of the city with vitrified brick

should be a charge upon the common treasury, though other streets are not paved. It inures to the convenience and advantage of all citizens alike, and should be a common charge to all."

Now after thus creating a liability to be paid by defendant and other property owners, we find that the city attempts to make this same liability a charge upon the property holders along the line of the improvement when theretofore it has paid for the same, and the property, thus sought to be subjected to the special assessment, has already been pledged to the holders of the bonds of the city for the payment of the money that was used in making the improvement. It was a condition precedent to the right of the city to issue the bonds for the purpose of raising money to pave that the same should be applied, and having so applied it, it should have the effect of extinguishing the amount which was thus paid, and was by the issuance of the bonds made a common charge against the taxable values of the city. When the bonds were issued and sold and the property subjected to the liability to the tax to pay the same, there arose upon the part of the city a correlative duty that the money so raised should be applied to the purpose for which it was raised — the law required that this should be done, and so requiring that there could be no further right to again tax the same property for this purpose.

What use will the city of Jackson make of the amount that will be collected in the suit if it is successful? Will it apply it to the payment of the bonds? Certainly not. For under their express terms of the contract they cannot be called for nearly twenty years from this date — the interest will not in any wise absorb the amount thus realized and the payment to the man who did the paving had been made. What will the mayor and aldermen do — surplus is always dangerous, and there is no means provided under the law whereby a surplus can be made, but in the instant case $100,000 would be paid into the city treasury for which it had no use — which could

not be used by it in paying for the special improvement, and which must lie there until the bonds mature, but even then there is a requirement that a special tax shall be levied for the payment of the bonds and the interest under another section thus showing that there was no idea that when bonds were issued for the payment, that a special assessment should be levied and should be collected and lie there idle.

Consider that when bonds are issued to raise money to do the paving, it is expressly provided: "Every such bond shall specify on its face the purpose for which it was issued, and the total amount authorized to be issued . . . The mayor and board of aldermen shall levy annually a special tax to be used exclusively in paying the interest on such bonds maturing within one year, and in providing a sinking fund for the redemption of the bonds issued."

Thus it is conclusively shown under the power here granted that when the same is exercised and bonds are issued and the proceeds used in paving that the funds wherewith the same are to be paid are to be raised under § 3015 of the Code and not under § 3012. If the bonds were thus issued, and they are to be paid in this manner, and not under § 3012, it is evident that the proceeds of the special assessment will have no place for application, and that the owner of the property will have to pay twice for the improvement — once when he pays the bonds which have been issued by paying the portion of the special tax that is levied to pay the same, and again when he pays the special assessment. This would violate the rule in *Macon v. Patty,* 57 Miss., 379, wherein it was declared: "The object of the assessment must be public, but not so exclusively public as to prevent its imposition in a particular locality; its proceeds must be expended on an improvement plainly exceptive and beneficial to the property on which it is imposed, and its rate must not be excessive beyond the cost of the improvement."

We submit that the ordinance of February 5, 1902, is also void, because:

(1) The § 3012 is the only authority for the assessment of the special tax, and it violates both the Constitution of this state —

(a) Section 17.  " Private property shall. not be taken or damaged for public use, except upon due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; and whenever an attempt is made to take private property for a use alleged to be public the question whether the contemplated use be public shall be a judicial question, and as such determined without regard to the legislative assertion that the use is public."

(b) " No person shall be deprived of life, liberty or property except by due process of law."

(c) Section 112.  " Taxation shall be uniform and equal throughout the state.  Property shall be taxed in proportion to its value."

(2) And, also, violates the fourteenth amendment to the Constitution of the United States providing that, no state shall deprive any person of life, liberty or property without due process of law, nor deny to any person the equal protection of the laws.

" It is now well settled with no dissenting voice, except in Iowa, that a local assessment requiring each lot owner on a single street or part of a street to improve the street in front of his property at his own expense would be unconstitutional, because there would be no apportionment of the tax; and Judge COOLEY says that such a law ' would be nakedly an arbitrary command to each lot owner to construct the street in front of his lot at his own expense, according to a prescribed standard; and a power to issue such a command could never be exercised by a constitutional government, unless we are at liberty to treat it as a police regulation and place the duty to make the streets upon the same footing as that to keep the sidewalks free

from obstruction and fit for passage.   But any such idea is clearly inadmissible.'   Cooley Con. Lim., 508.   BURROUGHS takes the same position.   Burroughs on Taxation, 469.   And the cases are uniform to the same effect except in Iowa."

Upon the federal aspect of this question this court is concluded by the decision of the supreme court of the United States in *Norwood* v. *Baker,* 172 U. S., 278, where this whole question is discussed most learnedly by Mr. Justice HARLAND, and it condemns unequivocally the plan of this statute.   This case and the Norwood cases are precisely similar in their facts.

The following are precisely similar:   *Tonawanda* v. *Lyon,* 181 U. S., 389; *Webster* v. *Fargo,* 181 U. S., 394; *Wormly* v. *District,* 181 U. S., 402; *Cass* v. *Detroit,* 181 U. S., 396; *Detroit* v. *Parker,* 181 U. S., 399; *Shumate* v. *Heman,* 181 U. S., 402; *Farrell* v. *Chicago,* 181 U. S., 404.

The rule in the *Norwood case* was approved in *Hibbon* v. *Smith,* 191 U. S., 310, and *Seattle* v. *Kelleher,* 195 U. S., 351.

There is nothing in *Wilzinski* v. *Greenville,* 85 Miss., 393, contrary to our contention.   That case did not arise under § 3011, Code, but under the charter of Greenville, and was a sidewalk case.   The " front foot " rule is there followed under the limitations stated, as interpreted (without approval) by the supreme court of the United States.   But this is to be particularly noted as the front foot rule there followed, viz.:   That the whole cost of the improvement may be apportioned among the abutting lots according to the frontage.   There is no support in this for the rule of § 3012 which requires each abutting owner to make and pay for the improvement in front of his own lot — not to pay the average of the cost of the whole improvement apportioned on the basis of the number of front feet — and if he fails to do so, then the street commissioner is to make the improvement and to keep the cost, and the cost of such improvement in front of such lot is to be made the

special assessment against the lot. Where in the absence of difference of conditions, the cost of the whole is apportioned according to front foot equality and uniformity among the class taxed would be secured; but where, as in § 3012, each person is severally to pay the cost of the improvement in his front, the payment so to be made by each has no relation whatever to those made by his neighbor. Hence, the inapplicability of *Wilzinski* v. *Greenville,* to the case made by § 3012, Code, is manifest.

*McWillie & Thompson,* for appellee.

It is said that the ordinance, or resolution of January 7, 1902, declaring it necessary to pave Capitol street, from Lemon street on the west to the old state capitol on the east, and parts of other streets is void because it does not describe with suf-ficient accuracy the improvement adjudged necessary.

The resolution is predicated of Code 1892, § 3011, which provides in cases of special improvements, so far as concerns the point under consideration, that " the board shall, by resolution, declare such work or improvement, describing it, necessary, and publish the resolution as an ordinance is required to be published."

The Code section surely does not require a minute and accurate description of all the details of the proposed improvement, such as would usually be inserted in plans and specifications for its construction; if it does, no description could be made which might not be criticized as failing to be sufficiently specific. All that is required is such a description as will inform property owners what improvement is contemplated, where located and what property will be affected by it. The description need not require the board to adjudge and determine an untruth, or what is the same thing, to affirm more than the truth, or to go beyond the truth.

The paving of Capitol street and the other streets specified in the resolution was necessary and the board so adjudged;

the paving of said streets with vitrified brick was not necessary, because an asphalt pavement, or a Shillinger pavement, or a Nicholson pavement would have done perhaps as well, or better, and the board, therefore, could not have adjudged that a brick pavement was necessary without doing violence to the truth. The law does not require such a thing.

Again, the law must be given a reasonable construction in the light of experience. It is a fact well known to the building and public improvement trade, that if plans and specifications for any large structure or public work be rigid and specify particular materials, without alternatives, and the contract be let thereon, the costs of construction will be greatly enhanced because the designated materials will cost the contractor, or owner, if he be required to purchase them, probably twenty per centum more than they could have been purchased for if the plans and specifications had not made their purchase necessary.

The statute was enacted in view of the fact well known to the building trade above mentioned and exemplified; it was never intended to require of a city that it should advertise beforehand its plans and specifications for public improvements, and thereby subject itself, and its taxpayers to exorbitant charges for all materials used in their construction. According to the argument of defendants' counsel the first step to be taken by a city looking to the paving of the streets would be to determine with what material they should be paved, without power to change, and the second one, the publication of the fact that the designated material had been fixed upon, thereby removing all competition between dealers in that material and dealers in all other paving materials. The Legislature that so radically condemned monopolies, trusts and combines, Code 1892, § 4437, did not fall into the mistake of placing the municipalities of the state in a position where they would necessarily be the victims of a want of competition between those from whom they might be forced to purchase.

What is it to be declared and described necessary? The statute says: "In such case the board shall, by resolution, declare such work or improvement, describing it, necessary, etc." In this case, whether we treat street paving as a "work" or as an "improvement" it was sufficient to describe it by saying, as was done, that it (1) was street paving, thus showing its general character; and (2) the parts of streets upon which the work or improvement was to be done, thus advising property owners what lands were abutting and to be subjected to special assessment.

There cannot be anything whatever in the contention of opposing counsel, as we think, in the absence of any showing that their client suffered damage because of the failure of the resolution to more accurately describe the public work. When it was passed all property owners were charged with notice of an intention to pave the designated streets and were informed by law, as well as the wording of the resolution, that they might, within twenty days thereafter, petition against the improvement. This notice was not narrowed or in anywise impaired by any want of particularity in the description of the paving to be done; the property owners could have petitioned against, and thereby defeated, any and all descriptions and kinds of pavement. The right to petition against paving not having been affected by the failure of the resolution to more specifically describe the pavement contemplated by it, abutting owners, including the defendant, must base their claim predicated of the description actually used in the resolution on the idea that they had the right, within a limited time, to pave the streets in front of their property themselves, and that they would have done so, but were denied the right. The law should not and will not allow any man to take advantage of a mere irregularity in a proceeding which has not injuriously affected him. Unless it be therefore, that the resolution is utterly void because of its failure more specifically to describe the work or improvement, and so entirely without validity as to deprive the municipal

authorities of all jurisdiction in the matter of their proceedings based thereon, the defendant cannot complain thereof in the absence of a showing that it was willing to and would have paved in front of its property had it been advised by a more specific description what sort of a pavement to lay. If it had demanded a more specific description, doubtless the same would have been furnished; defendant ought at least to have called for such description if it wished the same, not having made such demand, it should not be permitted to pose as having been injured by the want of a more accurate description.

The resolution was not void; there was certainly some description in it of the contemplated work or improvement; the paving was described to some extent, the streets along which it was to be laid were designated.

Who is to say how much description or how little is necessary? The statute does not impose this duty on the chancery court, or this court, but directs that it shall be done by the mayor and board of aldermen. The municipal board, therefore, acting as it must under Code 1892, § 1011 in a judicial or *quasi*-judicial capacity, is invested by law with jurisdiction to determine how much description of an improvement is necessary or proper to be inserted in a resolution giving notice thereof to the property owners. An appeal would probably have lain therefrom, under Code 1892, § 79, to the circuit court, but if not then the judgment or decision of the municipal board is final. In this case there were no efforts to appeal, and the judgment or decision of the municipal board approving the resolution and the description of the improvement contained in it is a final judgment, binding on defendant and on the world, including the court below and this court.

If the defendant within the statutory twenty days had constructed any sort of a pavement in front of its premises, it could, with reason, claim exemption from the special assessment; if its pavement had been an asphalt one, the same would have been accepted, no doubt, although the balance of the pave-

ment was or was not to be made of brick.  Of course the city in such a case would have to bear whatever inconvenience or unsightliness, if any, which might arise from the putting in of different kinds of pavement by different property owners along the same street.  But these considerations are more theoretical than practical; people easily get together on such things; besides no such case is before the court; the defendant did not exercise or attempt to exercise the right of doing its own paving, and it has not pleaded or even suggested any valid reason why it could not have done so, and could not have easily obtained all the necessary data to be wished for that purpose.

Think of it!  If the contention of defendant's counsel be correct, a city could not enter upon any public improvement without first encompassing the work in the most rigid of cast iron bands; no matter how clearly it might become apparent in the progress of the work that the designated plans and specifications were impractical, and, if allowed, would result in failure and loss to the city, yet according to counsel, no departure therefrom, no exercise of judgment, would be permissible without an abandonment of precedent action.  All well informed persons know that there never was a work of considerable magnitude entered upon in the progress of which exigencies did not arise requiring, or at least rendering advisable, a change, to a greater or less extent, of predetermined plans.  That the law is not so unreasonable as to place municipalities in the condition in which defendants seem to think they are is shown by the analogous case of *Marion County* v. *Foxworth,* 83 Miss., 677.

We will now gather up some of the odds and ends of appellant's argument seeking to show that the ordinance of January 7, 1902, was void for want of a detailed description of the pavement therein proposed:

It is said, speaking of the requirements of Code 1892, § 3011:

" The object being notice to enable those who have a right

to know, those whose consent thus given is an essential prerequisite to the doing of the work, that they and each of them should know, and accurately, what the improvement is to be, and thus its probable cost, and by whom the same is to be paid. It is elementary that when an election is presented to a party, that he has the right to demand the knowledge of everything necessary to enable him to make the choice."

There are several fallacies in this statement. It confuses a failure to protest, a mere negative, with the granting of consent, an affirmative act. It makes this supposed consent an essential prerequisite to power in the municipal authorities to have the paving done. You cannot legitimately, no matter how ingenious your argument may be, make affirmative action necessary to the exercise of a power, or jurisdiction, if, as here, all the law requires is mere inaction. Indifference on the part of property owners simply is warrant to the municipality for paving the streets; surely where mere indifference is prescribed, actual affirmative consent is not necessary. It is assumed that the resolution should, or else be utterly void, state accurately " what the improvement is to be " (as if the resolution in question did not do so) and thus its probable cost and by whom the same is to be paid." Does the city at its peril, as a matter of jurisdiction have to ascertain beforehand the probable cost? As a matter of business management prudent aldermen would, of course, inquire into the matter, but we are dealing with the question of judicial or *quasi*-judicial power, and so considering the matter, but one, and that a negative, answer can be made to the question. Let us illustrate: Suppose a board undertakes to ascertain in advance the probable cost of an improvement, but grossly overestimates it, are all precedent and subsequent proceedings thereby rendered invalid? Of course not. Suppose the estimate is an undervaluation — does this aid the case? Of course not again. What is the difference between no estimate and absurdly erroneous ones? An estimate materially erroneous is worse than none at all in the way of advice touching

probable expenditures, since it actually misleads, or is calculated to do so.  Municipal proceedings do not and should not be made to depend for their validity upon a non-essential, and so uncertain a thing as an estimate of cost.  The cost of anything itself depends upon too many contingencies which cannot be foreseen or foretold.  It is further assumed in the sentence above quoted that the resolution to be valid should have stated " by whom the same (meaning the cost of the paving) is to be paid."  This assumes that the property owners are not only as innocent as doves, but as well, that they are as ignorant as idiots.  It ignores the fact that all persons are charged with a knowledge of the law of the state.  We dare say there was not one of the property owners in Jackson who read the resolution, and all of 'them are presumed to have read it, who did not know that the mayor and board of aldermen were proceeding under Code 1892, § 3011, to have the streets therein named paved, and that the proceedings would be abandoned if within ten days from the date of the resolution a majority of them petitioned against it.  The resolution, by its terms, advised that the adjudication of the fact that the paving was necessary was made under Code 1892, § 3011; and every one of the property owners for whom a guardian was not needed knew that such an adjudication contemplated a special assessment, under Code 1892, § 3012, to be paid by them.

The difference between the notice given by the resolution in this case and that in the *Greenville case,* as shown in *Greenville* v. *Harvie,* 79 Miss., 754, is broad, so broad that complainant's counsel would not have been misled thereby under conditions not akin to those which surround a drowning man.  There was nothing said in the resolution about a special assessment; no reference was made to the statute under which the board was acting, and nothing advised property owners of their right to petition against the improvement.  There the resolution actually mislead, and was calculated to mislead.  Here the resolution itself was entitled " A resolution or ordinance declaring the

paving of parts of Capitol, Pearl and President streets necessary, and looking to a special assessment therefor." Surely property owners knew what a special assessment meant; surely a special assessment meant more than a "special improvement" criticized in *Greenville* v. *Harvie;* a city can itself make and pay for a special improvement as is often done, but a city never assesses itself. The Jackson resolution made reference to the Code section under which it was passed, and thereby charged notice upon everybody that a special assessment was to be levied, and in addition it warned the property owners to petition against the paving if they wished to escape assessment.

There is no requirement in the statute that the resolution should designate what proportion of the cost of the improvement should be borne by the abutting property owners, and therefore no necessity for its so stating.

Having complied with the Code of 1892, § 3011, the constitutionality of which is not assailed, the mayor and board of aldermen of Jackson became empowered to cause the streets in question to be paved and to contract therefor, and of course having jurisdiction of the subject matter, its discretion touching proceedings and its determination are beyond the control of this or any other court.

We are told by counsel that the resolution should have designated whether the paving was to be of asphalt, cobble stones, brick, chert, wooden blocks, or other paving material, and that it should have specified what dimensions were to be paved, giving width, etc., and the conclusion is sought to be drawn that it was void because of its failure to do so, else the criticism is pointless. The answer to all of this is that the law does not require that the paving materials shall be specified. Any property owner who was unwilling to leave the selection of materials to the municipal board was duly notified to petition against paving. If he was unwilling for any one of the materials designated by counsel to be used, he was notified to bestir him-

self with a petition against paving at all.   A failure to petition empowered the board to use any material it saw proper.

Of course the taxpayers of Jackson were and are men of good average intelligence; they knew from the resolution that the purpose of the board was to have the designated streets paved; they knew as persons of intelligence that a good and substantial pavement was desired, one that would last for years, and be equal to the demands of a rapidly growing city; they knew that the best informed persons differed as to the relative merits of the several paving materials in common use, and that care should be exercised in determining which of them was best suited to local conditions; they did not expect any unreasonable thing to be done; they did not anticipate a pavement to be made of egg shells or nuggets of silver; they knew that the law required the "improvement" or "public work" to be described in the resolution but that it did not require the "paving" to be described; they read the resolution and saw that the "improvement" proposed was described therein as being the paving of designated parts of certain streets and they did not expect that minute specifications would be given, elucidating the terms or any one of them used in describing the proposed improvement, since the law did not require it.   To the credit of the people of Jackson, only a few property owners, the defendant in this case being one of them, refused to pay their assessments.

Touching the matter of dimensions to be paved the resolution is specific that the entire streets from designated starting points to other points are to be paved.   If it be that the municipal board afterwards concluded that it was unnecessary to pave the entire width of the street, and caused the work to be done accordingly, the property owners cannot complain thereof, since the burden on them was diminished, and not increased by so doing.   Again, it is a question of power in the mayor and board of aldermen; if it was empowered by the resolution to pave the entire width of the street it had power to pave every

part of it; if a contingency arose which made it expedient to do less than proposed by the resolution the board was the exclusive judge of the matter and had full jurisdiction in the premises.

The second point urged by defendant's counsel is predicated of an assumption that it was unlawful for the municipal authorities to proceed under Code 1892, § § 3011, 3012, 3013, looking to a special assessment against abutting property owners charging them because of special benefits more than the taxpayers at large were charged on account of the street paving and at the same time proceed under Code 1892, § § 3014, 3015, 3016, 3017, to issue bonds with which to raise funds to be used in paving.

If two distinct powers are given a municipal board to be exercised at discretion, there is no reason in law or morals why both may not be exercised at the same time, and if both powers be directed to the accomplishment of the same end, and one does not contradict, neutralize or affect the other, no reason can be given why both may not be concurrently used. Whether they shall or shall not be so used is a question for the determination of the municipal board, and not this court, or even defaulting taxpayers, notwithstanding they are wont to claim greater rights and more of them than any other people on earth. .

It is not a prerequisite to the exercise of power by the mayor and board of aldermen, under Code 1892, §§ 3011, 3012, 3013, that the special assessments shall be made so large as to raise sufficient funds to pay the entire cost of a public improvement; nor is it a prerequisite to the power under Code 1892, § § 3014, 3015, 3016, 3017, that the city shall float bonds enough to entirely pay for any public work for which they are issued. Unless complete payment in one or the other case can alone give rise to the power, there is nothing left of defendant's argument on this point.

Certainly it is permissible for a city to raise money in two independent but perfectly lawful ways with which to pave its

streets; the aggregate sum raised not exceeding the cost as was the case in the instance at bar; but even if the two ways of raising money resulted in more funds than was actually required for the work, individual taxpayers can not resist suits for taxes on that account. Defendants have no status enabling them to complain of the fact that a large amount of the money for paving purposes was raised by the issuance of bonds, since thereby their special assessments were diminished and not increased; nor can they set up collateral proceedings by the city as affecting the special assessments made against them. If the assessments were valid when made they are not rendered invalid by the fact that afterwards, and before the last few assessments were collected, it was discovered that a few hundred dollars more were provided for than were actually used for the specific purpose for which the assessments were laid.

Surely the defendant has no right to object to the bond issue mentioned. It imposed no burden on it or its property. There is no danger, and we cannot see why opposing counsel should be alarmed, that anybody will have to pay twice for the pavement. The bonds were used to raise funds with which in part to do the paving before the collection of the special assessments. In fact there was no way to know the actual cost of the paving in front of any particular piece of property until the work was done. The city by the bond issue, called upon the taxpayers generally to advance in part the money for the work; those whose property was specially benefited by the improvement were specially assessed to reimburse the treasury which means the general taxpayers, to the extent in part of benefits received, and the use which the proceeds of special assessments shall be put is not a subject under defendant's control, nor can it any more than any other debtor, resist the payment of a just debt by questioning what the creditor will do with the fund if the debt be paid. Unless a debtor has such a right there is absolutely nothing in defendant's contention on this point. But in this case any payment defendant may be compelled to make will be

applied to paying the interest on all of the paving bonds due annually and to the satisfaction of the one or more bonds which mature each year.   There is and cannot be under the facts, although defendant's counsel seem to assume that there is, any danger of there being, a greater charge on defendant's property than the value of the pavement or rather than the cost of it.   Nothing will be paid for twice.   The defendant is simply specially assessed with the cost of paving one-sixth of the street in front of its property, and this because of special benefits to that extent or more, and this is the whole of the inequality of taxation, of which it complains.   So far as concerns five-sixths of the cost of the paving all taxpayers of the city were taxed alike.

Suppose the city had never issued any bonds, but at the time it entered upon the paving improvement its treasury had contained $100,000 in money, would it have been deprived of the power to levy special assessments because it had that money on hand and used it or a part of it in having the paving done?  Of course not, because the § 3011, Code 1892, says: " The work may be done before, during or after the collection of the special assessments."   In this case it was done in part before, in part during and in part after the bulk of the collections.   The bond issue has nothing to do with this case.

The statements in counsels' brief that " We have in this case (1) the cost of the entire improvement taxed against the property as a special assessment, and (2) the bonds wherewith the improvement was paid for taxes against the property in common with other property also.   In fine, have the cost of the improvement taxed against the property twice," are besides the mark.   Nothing of the kind is shown of the record.   These defendants have not paid once and there is no effort to make them pay more than once.   The special assessments collected after the pavement was completed and paid for, were and will be appropriated to pay the bonds and thereby diminish *pro tanto* the sum to be raised by general taxation to meet them

and defendant will be benefited thereby and its burdens lessened. Suppose six persons are equal partners and undertake the construction of a partnership building the character and location of which is such that it confers a special benefit on one of them, which all agree will be equal to one-sixth of his interest in the proposed new building and he agrees to pay it, if the others will consent for the partnership to do the work. Being without funds in hand the copartnership borrows $36,000 and constructs the building. It calls upon the specially benefited partner for $1,000, the amount he agreed to pay because of the special benefits; could he refuse to pay because of his equal liability with his copartners for the $36,000 loan? Of course not; there is no imposition of a double burden in such case on the specially benefited partner.

The taxpayers of Jackson were partners and by their representatives, the mayor and board of aldermen, they determined to pave the streets. It was found that some of them, the abutting property owners, would be specially benefited and the amount of special benefits was ascertained and obligation imposed on the beneficiaries to pay the same. All of the taxpayers, that is the city, the representative of all of them, borrowed money by issuing bonds and therewith paved its streets. Can the specially benefited property owners object when called upon to pay the assessments against them that the bonds are outstanding? Of course not.

It is no answer to say that the specially benefited partner in the case supposed is liable because of his promises. Promises do not create any more binding obligations than do valid special assessment; the point is, and the supposed case demonstrates it, that there is no double taxation or double payments to be worked out of this record, although opposing counsel would have us believe that by mere juggling of words and confusing ideas such a thing can be put into the case.

*Is Code 1892, § 3012 Unconstitutional?* Certainly § 17 of our state constitution on the subject of the taking of private

property for public use quoted by defendant's counsel is not violated by the Code section, since it in no way provides for the taking of defendants' private property, nor does it pertain to any proceeding from which damage to private property could result; it contemplates only benefits to private property from a public work.   Section 17 has no application to the case as we understand it.

Section 112 of our state constitution also quoted by defendant's counsel, announcing the equal and uniform rule for taxation, is besides the mark.   That section has no application to special assessments.   *Alcorn* v. *Hamer,* 38 Miss., 652; *Dailey* v. *Swope,* 47 Miss., 367; *Vasser* v. *George,* 47 Miss., 713; *Nugent* v. *Jackson,* 72 Miss., 1040; s.c., 18 South., 493.   The section applies only to *ad valorem* taxes for general purposes. *Clarksdale Insurance Agency* v. *Cole,* 87 Miss., 637; s.c., 40 South., 228.

Is the section (Code 1892, § 3012) violative of Constitution 1890, § 14, providing that no person shall be deprived of life, liberty, or property, except by due process of law, or of the fourteenth amendment to the Constitution of the United States, providing that a state shall not deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws?

This statute and the preceding section, § 3011, were decided to be constitutional in *Nugent* v. *Jackson,* 72 Miss., 1040, and although they did not as to other matters escape criticism in the opinion of the court, their provisions are brought forward by the learned codifiers of the Code of 1906 in the same language in §§ 3411 and 3412 of that Code.

And again, the constitutionality of the statutes, Code 1892, §§ 3011, 3012, was recognized and enforced in *Greenville* v. *Harvie,* 79 Miss., 754.

But it is said that these cases were sidewalk cases and not street paving cases, a distinction without a difference, so far as

concerns either the *Nugent case,* the *Harvie case,* or this case. The asserted differences rest alone on the statement of the court in the *Nugent case,* 72 Miss., 1057, to the effect that " as said in *Macon* v. *Patty,* there is a very wide distinction between the power to impose these local assessments for the improvement of streets and the improvement of sidewalks. The latter can be maintained under the police power," but there was no pretense in that case but that the city was exercising the taxing power. The case was not decided in favor of the city and its ordinances held to be valid because passed in the exercise of the police power.

In truth no better or more equitable and just method of imposing special assessments can be conceived than the one adopted in this case; the " front rule foot " which has been often judicially approved, has two varieties both of which have received judicial sanction; one takes the entire cost and apportions it among lot owners according to frontage. This is perfectly fair if the entire street be level and the benefits conferred be fairly proportioned thereby; but when the benefit conferred on one lot is much greater than on another of equal frontage such an apportionment is not according to benefits and should not be adopted. Our statute has wisely provided for each lot to bear the burden, or a part thereof to be determined by the municipal authorities, proportioned to the cost of the improvement in front of it. Inequalities in the lay of the land along a street often causes lots to vary in value. It is the case that the more ragged the street in front of a lot the less its value. The cost of paving in front of any particular lot is determined by the conditions there existing; the worse the conditions the greater the costs; but when the work is completed those lots are benefited most from the front of which the greatest obstructions have been removed. The carting away of a rock or the filling up of a hole which obstructed the entrance to a lot and the paving of the street in front of it will enhance its value more than the value even of an adjoining lot will be enhanced

if its front were not in such an undesirable condition before the work was done.   Manifestly the worse the condition of the street in front of a lot the more the lot needs to have the street improved and the more the lot needs the improvement the greater its benefits from the improvement.

In *Winzinski* v. *Greenville,* 85 Miss., 393, the city of Greenville by legislative authority laid a special assessment according to the " front foot rule," according to that variation of the rule which divides the entire costs by the whole number of feet paved, and charges each lot with a sum equal to the average cost per foot multiplied by its own frontage.   The city propounded her claim against Winzinski, as here, by a bill in equity, and as here the bill was demurred to on the ground that the statute was unconstitutional, because it fixed " the frontage of the abutting lots as the basis of measurement, and do not provide for the ascertainment of benefits to each lot from the improvement and for its assessment to the extent it is benefited."   Our supreme court decided adversely to the demurrer, adjudged that it would follow the supreme court of the United States, upon the subject, the court having adjudged two things:

First, that the doctrine of *Village of Norwood* v. *Baker,* 172 U. S., 269, is to be limited strictly to the peculiar facts of that particular case, as one in which the assessment was treated as an act of confiscation; secondly, that it is not a taking of private property for public use without compensation where the Legislature, or a city exercising delegated legislative power, charges the cost of paving a sidewalk as a lien upon the abutting lots of different proprietors according to the " front foot rule," without limiting the cost of the improvement by the special benefits received by such abutting lots, but that such levy is within legislative discretion.

This answers page after page of defendant's brief.   It makes no difference that *Wilzinski* v. *Greenville,* was a sidewalk case; the United States supreme court decisions which it follows and applies were, three of them street paving cases.   *French* v.

*Barber Asphalt Co.,* 181 U. S., 324; *Webster* v. *Fargo,* 181 U. S., 394; *Tonawanda* v. *Lyon,* 181 U. S., 389, and another, a sewer case, *Shumate* v. *Heman,* 181 U. S., 402.

Any lawyer who will carefully read and accurately consider the case of *Norwood* v. *Baker,* 172 U. S., 269, will see that it was misunderstood by all who assumed that it condemned the front foot rule; that rule was not involved; the case sought to enjoin the collection of a pretended special assessment laid by the village of Norwood in proceedings to open a new road through Baker's land and the effort was to charge on his other land, bordering on that taken for a new road, the cost of opening and improving it for use. This was mere confiscation and nothing else.

The case of *Webster* v. *Fargo,* 181 U. S., 394, is conclusive of the proposition that the cost of local improvements by legislative authority may be, in whole or in part charged upon the property benefited either according to valuation, superficial area or frontage. Frontage does not mean alone the front foot rule, but embraces the mode of apportionment adopted in this case.

No reasonable objection can be made to the statute, Code 1892, § 3011, 3012, because the first of the sections provides that the improvement shall not be made if a majority of the resident owners of property on the street to be benefited by the improvement shall within twenty days, etc., petition against the same. *Field* v. *Barber Asphalt Paving Company,* 194 U. S., 618. The statute would be perfectly constitutional and valid had it omitted all provisions for such petition. The Legislature could have empowered the municipal authorities to levy special assessments (and this is frequently done) whenever they deemed the improvement essential. The grant of a veto power to a majority of the resident owners is a concession and as such might have been withheld or granted to whomsoever the lawmakers saw proper. It is not a matter of notice; notice to all owners, resident and nonresident, is provided for

by the section and of course all had the right to appear before the board and urge any reason that existed or could be conceived why the paving project should not be further prosecuted.

This is not the same thing at all as a right to petition and have the petition operate as a veto; the board of mayor and aldermen after publishing the notice provided for by § 3011, would have to hear even one property owner if he wished to be heard in opposition to an improvement; and if but one objected and showed cause why the project should be abandoned the board should have to abandon it. The veto petition, however, is of no effect and could not properly be filed until it contained the names of a majority of the resident property owners. Don't confuse the two things, one, the right to be notified and to be heard, the other, a special statutory concession, a provision to the effect that a majority of the residents may veto. The notice is a constitutional requirement; the veto power a mere concession or gift, which might have been withheld.

The defendant, however, is not shown to be a nonresident and the question sought to be raised on this point can not be legitimately presented on this record. Nonresident owners, if there be any, could not themselves, were they before the court, complain, unless a veto petition, signed by a majority of the property owners, including both residents and nonresidents, had been presented to the board and ignored. Nothing of the kind was done.

Before leaving this branch of the case we will commend the decision, cited in defendant's brief, *King* v. *Portland,* 184 U. S., 69. The statutory law, charter, there involved, in many particulars is identical with the law of this case; each lot there was assessed with one-half the cost of paving in front of it and with a proportionate share of paving street intersections. King sued to restrain the city from collecting the assessments, but the supreme court of Oregon and the supreme court of the United States adjudged the proceedings valid and the assessments collectible. If defendant can find anything to its liking

in the cases cited by its counsel of *Hibben* v. *Smith,* 191 U. S., 310, and *Seattle* v. *Kelleher,* 195 U. S., 351, it is welcome to all that can be made from them.   We thank counsel for citing the cases.

Answering the quotation from Cooley on Taxation (3d ed.), 1223; (1st ed.), 453, found in defendant's brief and the other authorities cited of like import, we beg to say that since Cooley wrote the supreme court of the United States in *King* v. *Portland,* 184 U. S., 61 (see § 138, p. 63), has expressly decided that lots may be charged with the costs or part of it of paving in front of them; and the supreme court of Mississippi was one of the first in the Union to adjudge lawful the imposition of a special assessment of that character.   A statute of this state provided for a levy tax to be laid by the acre according to an arbitrary standard of value fixed by the statute itself, as follows: unimproved lands in part of the district, $5 per acre; in the remainder of the district $3 per acre; improved lands in a part of the district $20 per acre, and in the remainder $30 per acre.   *Dailey* v. *Swope,* 47 Miss., 367.   In fact, the Code sections, Code 1892, §§ 3011, 3012, are in perfect harmony, certainly in so far as concerns the matter of requiring each lot to bear the burden, or some part thereof of improvements in front of it, with what may be said to have been the public policy of Mississippi.   In 1846, before the birth of any man connected with this case, the Legislature empowered the municipal authorities of Aberdeen " to make an assessment of taxes upon any lot or lots in said town to an amount that may be deemed proper and necessary for the purpose of making improvements on the street or streets in front of said lot or lots."   True at that day the Constitution of the state did not contain a clause requiring taxation to be equal and uniform; but we have already seen that the present clause to that effect relates only to *ad valorem* taxes, so this is a circumstance of no concern.   The supreme court in the *Aberdeen case,* *Smith* v. *Aberdeen,* 25 Miss., 458, declared the act of 1846

constitutional, saying through Justice Yerger: "This tax, we conceive, is equal and uniform in every legitimate sense in which those words can be applied to taxes or the taxing power. It is equal because it imposes upon the owner of every lot the costs and expenses incident to the improvement of the street in front of his lot; and it is uniform because it applies to the owner of every lot situated upon any street in the town which the mayor and aldermen may direct to be improved. But is it said to be unequal because the costs of improvement are assumed upon lots situated upon streets ordered to be improved?" We do not think that this mode of assessing the tax is illegal or improper."

It will be observed that the act of 1846 was held to be valid by the supreme court of this state, for the very reason that it imposed upon the owner of every lot the cost and expenses incident to the improvement of the street in front of his lot, and was in consequence thereof equal taxation, and as it applied to all of the lots in front of which the improvement was to be made, was uniform taxation.

We have, therefore, a Mississippi supreme court decision for our guidance, one involving taxation by a municipal corporation for street improvements, which is conclusive; the Legislature followed it as it was warranted in doing. We have already referred to a case in which the Legislature followed *Smith* v. *Aberdeen,* the act construed in *Dailey* v. *Swope, supra,* by which the Legislature itself laid an assessment for public improvements, fixing arbitrary values itself, and now we call attention to an earlier one; the act of February 2, 1850, providing for levees in Issaquena county, levied taxes, fixing arbitrary values and yet it was held to be constitutional. *Williams* v. *Carmgck,* 27 Miss., 209. The levee act of December, 1859, is still another instance wherein the Legislature followed *Smith* v. *Aberdeen,* and itself laid a special assessment for a public improvement fixing arbitrary values. This was adjudged constitutional and valid in *Alcorn* v. *Hamer,* 38 Miss., 652. Our

entire levee system is based on the mode of taxation approved in *Smith* v. *Aberdeen,* and it is too late now to go back upon it in Mississippi; the Codes of 1892 and 1906 both follow it.   It is no answer to say that our levee cases (approved and followed in Missouri, Arkansas, and Louisiana) were not street paving cases; there is no difference in principle.   The *Aberdeen case,* upon which all of the levee cases rest was a street improvement case.   Mind you, we are on the question of whether the statute is void because of its adoption of the frontage rule, in respect to which please note what is said on the subject, 1 Abbott's Municipal Corporations, § 345, p. 833.   The author pronounces it constitutional and cites many cases so deciding.   See also Gray's Limitations of Taxing Power and Public Indebtedness, § § 1956 and 1971.   Before leaving this subject we wish to quote in part the 7th syllabus to the case of *Alcorn* v. *Hamer,* *supra,* in answer to those parts of defendant's brief claiming, outside of the record, that power to collect the taxes sued for ceased when the city paid for the pavements.   That syllabus is as follows:

" 7.   *Same.   Local Taxation.*   It is no valid objection to a law imposing taxation upon a district . . . that a part of the taxes to be. derived from a portion of the district is directed to be applied to the payment of debts which had been previously contracted by the municipal· authorities of that portion of the district, towards. the accomplishment of the improvement authorized by the law."

The claim by our friends that Code 1892, § 3012, was violated because the entire costs of paving was not charged upon the lots is refreshing, coming as it does from the mouths of those who have so ably and so earnestly insisted that the section conferred no power at all; now we have it from them that the section will not allow the taking of a part, but requires the taking of the whole.

We answer, the whole embraces all of its parts; power to go one mile embraces power to go any less distance.   Power to

tax to the extent of one hundred per cent of the cost of an improvement is power to tax to any less extent. It does not lie in defendant's mouth to claim that it does not owe and should not be made to pay one-sixth of the cost of the pavement because the city did not require of it the payment of the entire cost. Defendant is not seriously affected by the circumstance. If, however, this matter is to cut any figure in the decision of this case, we beg to remind the court that under the prayer for general relief, to be found in the bill, you can grant the city six times the sum sued for in the case and thereby remove the entire trouble on this point.

Argued orally by *Garner W. Green* and *Marcellus Green,* for appellant, and by *R. H. Thompson,* for appellee.

Mayes, J., delivered the opinion of the court.

This is a proceeding begun by the city of Jackson against the defendant company, under § 3012 of the Code of 1892, by petition in the chancery court; the object being to establish a lien on the property of defendants fronting on Capitol street in the said city, for the sum of $708.43, claimed to be due the city of Jackson for special improvements made by the city on the street whereon this property fronts, and the city having proceeded under § 3011 of the Code of 1892.

The facts are substantially as follows: viz.: On January 7, 1902, the city of Jackson, acting through its mayor and board of aldermen, proceeding under § 3011, passed a resolution wherein, among other streets named, they declared that the paving of Capitol street was necessary, particularly describing the portions of the street necessary, in their judgment, to be paved, and the property of defendant company fronted on the street designated. The resolution specifically stated that the mayor and board of aldermen were proceeding under § 3011 of the code, providing for special improvements, and gave notice to the owners of property fronting the street to be improved that they

should file their protest within twenty days from the passage of the resolution if they so desired. The resolution, by order of the board, took effect at once, but was duly published for three weeks, as required by § 3006 and 3011 of the Code of 1892. No protest was ever filed to the effectuation of this declared necessity for paving the street in question by any person. After the publication of this resolution, and on February 4, 1902, the mayor and board of aldermen passed a second resolution, which is as follows: " Whereas, on the 7th day of January, A. D. 1902, the mayor and board of aldermen of the city of Jackson, by an ordinance or resolution of that date, duly entered of record on their minutes, declared the paving of certain parts of Capitol, State, Pearl and President streets in said city to be necessary, and have caused said ordinance or resolution to be published, that is to say, for three weeks in the Daily Clarion-Ledger, a newspaper published in said municipality, which publication is adjudged to have been duly made; and, whereas, none of the resident owners of the property on said streets, or on any or either of them, or on said parts of said streets, or on any or either of said parts, has up to this time filed a protest in writing against said improvement with the clerk of said municipality, " etc. By this ordinance, though the entire ordinance is not set out in full, the expense of this special improvement was apportioned between the Jackson Electric Railway Company, it being required to pay the cost of paving that portion of the street lying between its tracks and rails, covered by a space two feet wide on the outside of each rail and adjoining same, and property owners abutting the street were required to bear the burden of paving one-sixth of the width of the street, by paying for same or laying the pavement themselves. This ordinance specified vitrified brick as the material out of which the pavement should be constructed. This ordinance also directed the city engineer to make report to the board as soon as practicable, showing the separate pieces of real property abutting on the parts of the street to be paved, stating the owner

and occupants of each, the width of the street in front of or adjoining each piece, and all data that would enable the board intelligently to levy a special assessment under § 3011 and 3012 of the Code of 1892.   This resolution was made to take effect at once — that is, from the date of its passage on February 4, 1902 — and was duly promulgated and published.

After the ordinance of the 4th of February, 1902, and before April 19, 1902, the city engineer, in compliance with the direction of the mayor and board of aldermen, prepared the plans and specifications by which and in accordance with which the street should be paved.   On April 19, 1902, the plans and specifications having been presented to the mayor and board of aldermen, a special meeting was called, whereupon the plans and specifications which were then on file in the office of the city engineer, and with the clerk of the mayor and board of aldermen, were approved.   At this special meeting, the board directed the street commissioner to give notice to the owners or occupants of land abutting on the street whereon was situated the defendant company, as required by § 3012 of the Code of 1892.   It will be noted just here that, at the time notice was given to the property owners to construct the pavement in accordance with the plans and specifications of the engineer, these plans and specifications were on file in the city engineer's office and the clerk's office, and had been adopted and approved by the mayor and board of aldermen.   The mayor and board of aldermen, by resolution, required the street commissioner, if the property owners failed to construct the pavement as required, to make the improvement himself for the city.   The street commissioner was required to make the improvements in case he was compelled to do so on account of the failure of the owners to comply with the order of the board, according to the plans and specifications which they had approved as returned to the city engineer.   This resolution, at the special meeting, was made to take effect from and after its passage and was duly published.   On the 22d day of April,

1902, the street commissioner notified the defendant company, and other owners and occupants of property abutting the street required to be paved, which notice in every respect conformed with the requirements of § 3012 of the Code. The defendant company failed to make the improvement as required by the resolution of the city after notice was served on them, whereupon, after the expiration of the five days, the street commissioner proceeded to construct and make improvement himself, acting under the instruction of the mayor and board of aldermen, and caused the street, whereon fronted this property of the defendant company, to be paved according to the plans and specifications adopted by the mayor and board of aldermen. After the paving was completed, the street commissioner reported to the mayor and board of aldermen the cost of paving in front of the defendant company's property, which said cost amounted to the sum of $708.43, according to an accurate account kept by him of the cost. Whereupon, at the next regular meeting, after the completion of the work and the report of the commissioner, the board adjudged this sum to be due, and a charge upon the property of the defendant company described in the petition hereto. The assessment was confirmed, and the sum has never been paid, the defendant company having refused to pay it, whereupon this suit was brought for the purpose of recovering the cost and damages allowed by the statute. A demurrer was interposed to this petition, and a great number of objections were raised. This demurrer was overruled, and the defendant company appeals to this court. The demurrer is of such great length, and raises so many questions, that it is a practical impossibility to take up and discuss separately each of the questions propounded by it; nor do we deem it necessary, since nearly all questions raised have long since been settled almost beyond controversy. We direct our attention to such matters as we deem controlling in the decision of this case.

The first question, and the only serious question raised by

counsel for appellant, is that the resolution of the mayor and board of aldermen of January 7th is void because it did not describe the improvement which was deemed necessary with sufficient accuracy. Section 3011 of the Code of 1892 provides that: " When the mayor and board of aldermen shall deem any improvement which requires unusual outlay and costs in excess of the general improvement fund, of which the board shall be the judge, on any street, lane,, etc., necessary, a special tax therefor may be levied. In such cases the board shall, by resolution, declare such work or improvement, describing it, necessary," etc. Proceeding, under § 3011, the mayor and board of aldermen by this resolution of January 7th declared " the paving " of Capitol street, etc., necessary. In this ordinance the streets whereon this pavement is declared to be necessary are particularly stated, but the material out of which these " pavements " are to be constructed is not stated. Whatever defect existed in this original ordinance by reason of the fact that it did not sufficiently describe the character of the improvement to be made, in that it did not give the material out of which it was to be composed, was cured by the second ordinance of February 4th, in which the material was specified. In this second resolution of February 4th, it was required that the street be composed of vitrified brick. In order to acquire jurisdiction to have these streets paved, it was not necessary that the material should be stated in the first ordinance passed on the subject. All these ordinances were passed in the process of acquiring jurisdiction, and the property owners might have protested after the passage of either of them; but there was no protest at any time. If the property owners wanted to protest either on the ground that they did not want to have the streets paved at all, or that the material was too expensive, they had their day in court and permitted the action of the board to go uncontested. Though the first ordinance of January 7th did not sufficiently describe the material, when taken in connection with the second ordinance the law

was fully complied with. All ordinances were made to take effect from the date of passage, and all ordinances and resolutions were published. Everything that it was necessary for the property owners along this street to know was put in these ordinances, and they were given notice of it. They raised no objection; they filed no protest. If this notice of the intention to pave had been followed up by a person of casual information, of ordinary prudence, he would have discovered, to the minutest detail, every plan and every purpose which the mayor and board of aldermen had in view with reference to this pavement. The resolution of January 7, 1902, shows that the improvement contemplated is intended to be a special improvement, and that the cost of it is to be paid by the property owners fronting upon said street. The resolution proceeds to say: "Be it resolved by the mayor and board of aldermen of the city of Jackson proceeding under § 3011 of the Code of 1892," etc. By this resolution of the board, § 3011 became as much a part of the ordinance as if its literal language had been incorporated into the resolution itself.

The section quoted — that is to say, § 3011 — is placed in the Code for the very purpose of enabling the mayor and board of aldermen to tax abutting property owners for improvements ordered made under this section, when deemed by them to be necessary. Therefore we do not understand that the case of *Greenville* v. *Harvie,* 79 Miss., 754; 31 South., 425, holds that the specific mention of this section of the Code in the resolution, declaring the work necessary, does not incorporate into the resolution whatever provisions are contained in the section. The resolution passed by the board on January 7, 1902, is radically different from the resolution of the board in the case of *Greenville* v. *Harvie,* condemned by the majority opinion in the case *supra.* In *Greenville* v. *Harvie,* the resolution was that "the hereinafter mentioned and described improvements and repairs of sidewalks in said city are necessary, and to this end notice is hereby given that the city

council will cause to be constructed, or repaired, the sidewalks of said city," etc. It will be observed that the above ordinance did not designate that notice should be given to the owners of the property, but the resolution is merely that "notice is hereby given that the city council will cause to be constructed the sidewalks," etc., and the court said in the majority opinion: "If the tax is to be levied upon abutting lot owners, we think it should be so determined at the very beginning of the proceeding, so that the property owners may have opportunity to protest against the improvement, and so protect themselves against the expense." The court, in a majority opinion, held this ordinance fatally defective. The resolution in this case is quite different. The notice is to the owners abutting the street, especially designating that they (the owners) may within twenty days file their protest. By the resolution in this case, the owners are notified of the intention of the board to assess the cost of the improvement against them, and are given an opoprtunity to be heard against it. For the consideration of this case, it is immaterial whether we consider the reference to § 3011 of the Code of 1892 as incorporated in the resolution or not, as the ordinance is definite without this.

Again, the argument is made that this ordinance is void because it imposes double taxation, in that at the same time the mayor and board of aldermen declared this special improvement to be necessary in the resolution of January 7, 1902, they also provided for the issuance of bonds for the purpose of constructing this work and issued bonds for this purpose, taxing the defendant company by general taxation with its *pro rata* part of the taxes necessary to pay the bonds which were raised for the purpose of paving this street, and at the same time requiring the property owners along this street to do the work themselves. We do not think that this contention is sound. In the first place, the raising of money by bonds wherewith to conduct this work was not altogether for the purpose of laying the pavement in front of the property of the defendant

company.  It must be borne in mind that the city itself was to pay a certain proportion of the expense of this pavement, and in order to do this it was necessary for it to have funds to pay for same.  The property owners were to pay only one-sixth, the railway company a certain sum taxed against it, and the city the balance.  It was necessary therefore for the city to have money to pay for the laying of its part of this work.  This was not all.  The law provides, in § 3012, that, if the owner of property fails to make this special improvement within twenty days after the ordinance becomes operative, the street commissioner shall, upon order of the board, after giving five days' notice to the owner or occupant of each piece of property to be assessed, etc., make the repairs, or construct the improvement, or cause it to be done, keeping an accurate account of the cost thereof, and reporting same to the board at its next regular meeting thereafter for assessment, etc., where-upon it shall constitute a lien upon the property to be bound, etc.  This record shows that this notice was duly served, and the defendant did not proceed to construct this work, and afterwards the city constructed it.  It would  be impossible to carry on the machinery of government without money.  Money can be raised for a city only by taxation.  It was necessary for the city to have on hand funds with which to complete the work where the owners failed or refused to do so.  They could have this money only by increasing the taxation, or by raising it on bonds, as they did do.  The burden of paving this street, in the first place, is imposed upon the property owner.  If he failed to do it, the authority is given by the Legislature for the city to do it.  If the city is to proceed to make this improvement, it is difficult to understand how it is to do so without money.  To construct this work on the failure of the owner to do it, and to make this statute effective, it must be enabled, as it is under the law, to do the work and pay for it out of the municipal treasury from funds raised by taxes.  We dare say it would not be contended that this

would be double taxation, if the city had in its treasury enough funds to do the work without being compelled to issue bonds; but the money in the treasury would have been raised by another method of taxation simply, and the property of the defendant company would have to pay its *pro rata* of this tax just as it is compelled to do in regard to the payment of this *pro rata* part of the taxes created by the issuance of the bonds. The question of double taxation has no application to any kind of tax except that which is imposed for general revenue purposes, wherein the public, in common, are to share in the burdens and the benefits. Double taxation has no application to a tax imposed because of the special benefit accruing to the party by whom it is to be paid. "When a property owner has been specially benefited by street improvements, he cannot claim immunity from assessments for such benefits, because his property will also be subject to taxation on account of the loan created by the city for the purpose of paying that portion of the improvement for which the city itself is liable." *O'Mara's Appeal,* 194 Pa., 86; 45 Atl., 127; 25 Ency. of Law (2d ed.), p. 1174. Neither can the property owner claim immunity from taxation where the city has been compelled to issue bonds to raise money to do work for which the owner was primarily liable, but, because of his refusal to do the work and discharge the liability, the city has been compelled to do it and to look to the property owner to discharge it afterwards.

The only way in which a municipality can make its ordinances requiring special improvements effective is in just the way which the Legislature has provided; that is to say, by giving to the municipality the right to notify the owner to make the improvement, and on his default to do it itself. If the Legislature had empowered the municipality to notify the owner, and, in default of his doing the work, give the city the power only to pass ordinances punishing him with a fine and imprisonment, or a fine or imprisonment, instead of empowering them to proceed with the work, this mode could not

have been effective had any proper owner stubbornly refused to obey the ordinances of the municipality and make the improvement.   The right of the municipality, acting for the public, was not made subservient to the will of any property owner in this way.   He might have been fined for the violation of the ordinance, but the work would not have been done.   Therefore, in the wisdom of the Legislature, they have said that on default of the owner the city itself might proceed to do the work and charge the cost of same as a lien upon the property.   The tax paid by the defendant company on the bonds is a general tax under a general levy, and it can be made to pay this but once.   The amount it is due the city for making this improvement is a special assessment; the obligation to pay same being incurred not by reason of any general taxation, but by reason of special benefits accruing to it by the payment of this indebtedness, in which the general public have no interest.   This is not double taxation.   The liability of the defendant company to pay this amount to the city proceeds upon a different theory and is incurred in a different way from the levy on the property for general taxes.   There is no analogy between the two. O'Mara's Appeal, 194 Pa., 86; 45 Atl., 127; 25 Ency. of Law (2d ed.), p. 1174; Gray's Limitation of Taxing Power, § 1359.   It cannot affect this question in any way whether or not the city through its street commissioner proceeded to lay this pavement, or whether it let it out by contract.   It had the power under the statute to do it either way.   The only thing that the taxpayer could require would be that he be charged no more than the actual cost of the work, in whatsoever way the pavement was made.   1 Abbott on Municipal Cor., § 292, pp. 652, 653.

It is argued by counsel for appellant that the rights given under § 3011, and those given under §§ 3014, 3015, and 3016, are exclusive one of the other, and, if the city pursued the remedy under one section to accomplish the end, by so doing it precluded itself from using the other.   To the establishment

of this proposition it is to be noted that counsel cite no authority save this statement in the brief. The mayor and board of aldermen, as a matter of fact, did proceed under § 3011, as is clearly manifested in the resolution passed, and it was their intention that the property owners along this street to be paved should pay this tax, and they so expressed themselves. They did raise money by the issuance of bonds under §§ 3014, 3015, and 3016 of the Code of 1892, and these bonds were raised for the purpose of effectuating their intentions, as declared in the resolution of January 7, 1902. If it became necessary to raise this money for the purpose of completing this work and making these resolutions effective, they had the right to do so under §§ 3014, 3015, and 3016 of the Code. The issuance of these bonds for the purpose designated in no way affected the liability of the defendant company, nor furnishes any excuse for them for the nonpayment of their *pro rata* part of the expense of this pavement. We can see no way in which § 3012 of the Code of 1892 violates § 17 of the Constitution of the state. Section 17 of the Constitution of the state provides that " private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law," etc. By the authorities quoted above, it is seen that this section of the Constitution has no application to the question of special assessments; nor has § 112 of our state Constitution, which section announces the equal and uniform rule of taxation, any application to this case. There is no taking of property or damaging of property by this local assessment within the meaning of § 17 of the Constitution, and, as well put by the counsel, it contemplates only benefits to accrue to the property from public work. In truth, the base of the authority for imposing this tax upon property owners at all is founded on the fact of special benefits to the property owner. That § 112 of the Constitution has no application to this cause we cite: Gray's Limitation Taxing Power, § 1312,

p. 649, and note; *Alcorn* v. *Hamer,* 38 Miss., 652; 2 Cooley on Taxation (3d ed.), 1192; *Dailey* v. *Swope,* 47 Miss., 367; *Christman* v. *City of Brookhaven,* 70 Miss., 477; 12 South., 458; *Vasser* v. *George,* 47 Miss., 713; *Nugent* v. *Jackson,* 72 Miss., 1040; 18 South., 493; *Clarksdale Ins. Agency* v. *Cole,* 87 Miss., 637; 40 South., 228. In Cooley on Constitutional Limitations ([7th ed.] p. 715), in dealing with the subject of what constitutes a taking of private property for public use, and dealing with this very question, he says: " When the Constitution provides that private property shall not be taken for public use without just compensation therefor, it has reference to an appropriation thereof under the right of eminent domain. Taxation and eminent domain indeed rest substantially on the same foundation, as each implies the taking of private property for public use on compensation made; but the compensation is different in the two cases. When taxation takes money for public use, the taxpayer receives, or is supposed to receive, his just compensation in the protection which government affords to life, liberty and property, in the public conveniences which it provides, and in the increase in the value of possessions which comes from use to which the government applies the money raised by the tax, and these benefits amply support the individual burden." In a certain sense, of course, even local assessments must be uniform, but the character of uniformity required of special assessments is quite different from that which prevails under the general uniformity clause of the Constitution. 2 Cooley on Taxation (3d ed.), p. 1182, notes; 25 Ency. Law (2d ed.), pp. 1172, 1174; Gray's Limitation Taxing Power, p. 940, §§ 1835 (2), 1836.

It would seem from the authorities quoted that all the other constitutional questions raised by counsel for appellant here have been settled against their contention. Sections 3011 and 3012 of the Code of 1892 simply establish the front-foot rule. It may be that through this system some inequalities may be

brought about, but this fact would not render the statute unconstitutional. Absolute equality cannot be attained in any plan of taxation. No person has ever yet been wise enough to evolve a scheme of taxation by which absolute equality can be secured. These sections have been repeatedly before the court, and each time they have been upheld as constitutional, and we see no reason to change the court's ruling upon this subject. The cases of *Nugent* v. *Jackson,* 72 Miss., 1040; 18 South., 493; *Greenville* v. *Harvie,* 79 Miss., 754; 31 South., 425, and *Wilzinski* v. *City of Greenville,* 85 Miss., 393; 37 South., 807, all uphold these statutes as constitutional. We repeat the language of the *Wilzinski case* that "it would be idle for us to attempt to add to the learning" after the exhaustive discussion in the case of *Macon* v. *Patty,* 57 Miss., 378; 34 Am. Rep., 451, and the case of *Wilzinski* v. *Greenville,* 85 Miss., 393; 37 South., 807. The *Wilzinski case* firmly establishes the front-foot rule, and the proceedings by the mayor and board of aldermen show that this application of it was more than equitable in the distribution of burdens in proportion to benefits received. Gray's Limitation Taxing Power, p. 941, § 1837; 2 Cooley on Taxation (3d ed.), vol. 2, p. 1153, § 1; *Id.,* p. 1181, § 4; *Id.,* p. 1217.

We deem it unnecessary to discuss the time within which the property owners might have proceeded to make this improvement themselves. The first resolution was passed on January 7, 1902, and by order of the board was made to take effect at once. Publication was made as required by the statute, but no protest was filed. Neither under this nor any subsequent resolution or ordinance was there any effort to comply with the order of the board on the part of the defendant company. The first and all subsequent resolutions appertaining to this improvement were passed and published in 1902, and every notice required by the statute served on defendant, and, though the work was not completed until 1905, there was no effort on the part of defendants to do the work; nor is there

a hint in the record that they objected on the ground that they were not given the opportunity to make the improvement themselves. In conclusion, we desire to say that the Legislature has not left property owners at the mercy of the mayor and board of aldermen. The statute was careful to guard the right of the property owner by providing that he should be given notice of the intended improvement and a time within which to enter his protest. This notice was given, and there was no protest. The safe time for the property owner to object, if he intends to object, is at the time the law has designated for this when the machinery of government is first put in motion, and not wait until the improvement has been made and the benefits accrued, and then seek to defeat the assessment by finding some irregularity in the proceedings leading up to it that would invalidate it. Gray's Limitation Taxing Power, § 1939, p. 991, and see note 25. See particularly Gray's Limitation Taxing Power, § 1962, and concluding paragraph of that section.

*Affirmed.*

CALHOON, J., dissented.