## B. C. Duncan *v.* City of Grenada.

[64 South. 834.]

Municipal Corporations. *Public improvements. Paving. Apportionment of expense. Laws* 1912, *chapter* 260.

Where an amendment was made to the charter of a city operating under a special charter in manner as required by law, whereby all of chapter 260 of the Laws of 1912, except the title thereto and the first paragraph of section one, was made a part thereof, by such charter as amended the mayor and board of aldermen are given the power to decide as to special improvement, to order same and require the payment therefor in the manner provided. The city could require the abutting owners on each side of a street ordered paved to be assessed for the cost of paving one-third of the street on their respective sides, and require the city to pay for the middle third.

Appeal from the chancery court of Grenada county.
Hon. J. G. McGowan, Chancellor.

Suit by B. C. Duncan against the city of Grenada. From a decree dissolving a temporary injunction, complainant appeals.

The facts are fully stated in the opinion of the court.

*J. L. Barnard,* for appellant.

The Act of 1912 provides two methods of improving streets, viz: At the expense of the municipality and at the expense of the abutting property owners. Nothing is said about a division of the burden. The two methods are provided, clear and distinct. There is no middle ground. No discretion given a municipality.

Municipal corporations are corporations of limited powers. Their charters are the source of every and all power, and, we must look to them to ascertain what is the extent and measure of its powers. An enumeration of every power is inserted in the charter. In every in-

stance the charter must be strictly construed, and, all reasonable doubt as to the existence and possession of a power must be resolved against the municipality and the power denied it.  28 Cyc. 265.

Under its original charter, the city of Grenada had a right to pave its streets and to bear the expense.   The amended charter gave them the right to pave its streets and assess the abutting property owners, in addition to the right it already had.   Does the amended charter give them any more right.to prorate the expense than did the original charter?

In *Cincinnati* v. *McDuffe,* 1 Ohio, 88, it was held that the city had no right to construct a branch or lateral sewer under an ordinance providing for the construction of a trunk sewer.  If the authority, given to construct a trunk sewer, does not imply authority to construct a branch sewer, can the authority given to pave streets at the expense of the municipality or the abutting property owners, imply authority to pave the streets and prorate the expense?

If it was the intent of the legislature to give municipalities authority to pave their streets and pay for same by more than the two methods given, why did they particularly specify the two methods given, why did it not name the other methods if it named two, or why not merely give authority to pave streets and leave the methods of paying the same to the municipalities.

Although I have made an exhaustive search, I have been unable to find any law bearing on this case, except the case of *Edwards House Co.* v. *City of Jackson,* 91 Miss. 462, 45 So. 14.  In that case, although attorney for appellant raised the point involved in this case, he did not argue it but pressed other points, and the court, after considering the other points involved, merely touched this point as follows, ''It is argued by appellant that the rights given under section 3011 and those given under sections 3014, 3015 and 3016 are exclusive, one of the

other, and if the city pursued the remedy under one section to accomplish the end, by so doing it precluded itself from using the other. To the establishment of this proposition it is to be noted that counsel cite no authority save this statement in his brief.'' It is clear that the court, in considering this case, did not go into this point, but, because counsel did not press it, dismiss it without considering it. For the above reason, I do not consider *Edwards House* v. *City of Jackson,* an authority on the point involved in this case.

I, therefore, submit that this court should reverse the decision of the lower court and make perpetual the injunction issued to appellant against the appellee.

*Cowles Horton,* for appellee.

The question presented calls for a construction of the Act of 1912 in connection with the other provisions of the city charter. It is not denied, 1. That the city has the right to pave these streets and issue bonds to provide the necessary funds; 2. That it may require the improving at the expense of the abutting property.

But it is argued that the Act of 1912 necessarily requires that one of these methods be adopted to the complete exclusion of the other. In considering the act, we must likewise consider these other provisions of the charter, and must not lose sight of the fact that the city is expressly authorized to issue its bonds ''to aid in any important work for the interest of the city.''

We must also remember that the amendment of 1913 did not expressly repeal or amend any section of the city charter, except section 11 which was repealed *in toto.* Having, then, the right under its charter to pave its streets, or have them paved, to issue bonds to pave, or to aid in the paving, unless the amendment requires, by proper construction, that the entire expense be borne either by the city itself or abutting property owners, there is no doubt of the correctness of the decree dissolv-

ing this injunction and dismissing this bill. Should this act be so construed?

It is admitted that under the Code of 1892 and of 1906, cities might thus apportion the work, and do the improv- ing according to the plan adopted. This method found approval in this court in the case of *Edwards House Co.* v. *Jackson,* 91 Miss. 462.

Another reason why appellant's construction of this act is wrong is this: By section 4 of this amendment, it is expressly required that "in case any municipality has already commenced any particular kind of special improvement the municipality must continue to assess the cost on all owners of property in the municipality in the same way that the assessment was made before the passage of this act, to the end that all persons may be compelled to pay for the same character of special improvements on an equal basis." This would require certain cities to prorate the expense, and, being the only law on the subject, would prohibit an assessment contrary to this basis. Manifestly, therefore, as to these cities there can be no prohibition of the apportionment, and, at the same time, it clearly appears that this provision is no exception in reference to such cites, limiting the apportionment under the act only to them. The provision would compel a different construction of the whole act had it been written so as to read that such municipalities might, in the discretion of the board, follow out a previous basis, but it was placed in the act for an entirely different reason, namely, in order to compel equality of assessment in doing the same character of improvement.

Appellant argues that this apportionment cannot be made for the reason that the amendment does not expressly authorize it, upon the idea that cities can exercise only such powers as are conferred on them. The answer to this argument is that in this respect the Code of 1892 and the Act again are similar, neither authorizing expressly nor prohibiting the apportionment. The Code,

as construed, by necessary implication authorized a combination of the two methods, and this construction must likewise apply to the act unless there is some reason, found in the latter, for a change.

The argument is made that the act provides that the special assessment be made "as herein indicated" and the tax indicated is for the whole and not a part of the expense. That it is, therefore, not permissible to levy the assessment for less than the whole, since no provision is made therefor. The answer to this argument is, that there is no difference between the act and the Code in respect to the assessment. Section 3011 of the Code authorized the board to levy the special assessment "provided in the next section." Section 3012 provided that the assessment should be "for the cost of the improvements" etc. In both the act and the Code, the requirement is that an account shall be kept of the expense of the improvement, and the cost thereof be assessed against the property. The method of assessment in the act is the same as detailed in the Code of 1906, amending the Code of 1892, but in none of these laws is found any express provision for assessing a part of the expense against the property.

We have discussed this amendment without reference to the other provisions of the city charter, believing that the act as applicable to all municipalities under the Code authorizes the apportionment of this burden. If mistaken in this, we are quite confident that a proper consideration of the other charter provisions will demonstrate the correctness of the decree appealed from. This amendment repealed no provision of the charter, except section 11 which it superseded. The city retained all the authority it had prior to the adoption of this act and acquired the additional powers given it thereby. The right to issue these bonds is found, not in this amendment, but in section 13, by which the city is authorized to issue bonds "to aid in any important work for the interest of

the city," and, under this provision, it is authorized to issue these bonds for any important work within the power of the city to do. If the city has the right, therefore, to pay a portion of this expense at all, it certainly may issue its bonds for the purpose of raising the funds for the improvement. It must also be true that the city is not required by this section to bear the whole burden, but that the extent and amount of the "aid" given lies within the discretion and judgment of the municipality itself. If this view of section 13 is correct, the city would be authorized, undoubtedly, to raise the funds to pay for whatever proportion of the expense that might be determined upon, and would not be required to exhaust its authority by issuing bonds to pay for the whole expense. Taxpayers should certainly not be heard to complain that the extent of the issuance was two-thirds less than it might have been, or their burden less than they might be compelled to bear. See *Weston* v. *Hancock Co.,* 98 Miss. 808.

Neither should the abutting property owner complain because the city has taken from him a part of the burden, which it, undoubtedly, might have placed entirely on his shoulders. Having the unquestioned authority to assess him with the whole, can it be said that the assessment is invalid because less than what it might have been? In the case cited, the court squarely held that it might not be, and makes the statement that the issuance of the bonds "in no way affected the liability of the defendant company, nor furnishes any excuse for them for the nonpayment of their *pro rata* part of the expense of this pavement." It was also stated: "We dare say it would not be contended that this would be double taxation, if the city had in its treasury enough funds to do the work without being compelled to issue bonds." Applied to the case at bar, this statement should put at rest any question as to the validity of this issue, for the reason that if Grenada may, under its charter, pay a portion of

this expense at all, it may issue bonds to provide the
necessary funds, since its authority in this respect is so
broad as to cover "any important work for the interest
of the city" which its charter authorizes. Having the ex-
press authority to pave its streets both by this amend-
ment and by section 10, subdivision 12, or to have same
done, and the improvement being, admittedly, an "im-
portant work for the interest of the city," a construction
which would require it to issue bonds for the entire, or
no part of this, expense would be, in our judgment, an
unreasonable and erroneous one. As expressed by the
court in the Weston case, *supra,* "law is found in reason.
Safeguards are imposed for a real purpose not as mere
technical obstructions."

Reed, J., delivered the opinion of the court.

The city of Grenada is under a special charter. An
amendment was made to the original charter in 1913, in
manner required by law, whereby all of chapter 260 of
the Laws of Mississippi of 1912, except the title thereto
and the first paragraph of section 1, stating what acts
and Code sections are therein amended, was made a part
thereof. The mayor and board of aldermen of Grenada,
after the charter was amended, adopted a plan for pav-
ing certain streets in that city. By this plan the abutting
property owners on each side of the street are to be as-
sessed with the paving of one-third of the street on their
respective sides, and the city is to pay for the middle
third. The city was duly authorized, by an election, to
issue bonds in order to provide the necessary funds for
the payment of its *pro rata* share of the expense of the
paving. The bill in this case was filed by appellant, a
citizen and qualified elector of the city, for the purpose
of obtaining an injunction restraining the officers of the
city from issuing the bonds. The chancellor sustained
the motion to dissolve the temporary injunction, which
had been granted, and dismissed complainant's bill.

From this action of the chancellor, the appeal in this case was taken.

Counsel for appellant, in his brief, states that the only question presented in this appeal is "whether, under the law, the city of Grenada has the right to pave the streets according to the plan adopted."

It is contended that the act of 1912, which has been made by amendment a part of the charter of Grenada, provides two methods of improving the streets, one at the expense of the municipality, and the other at the expense of the abutting property owners, and that the city has no power to make a division of this burden.

We see nothing in the charter to condemn the plan adopted by the city. On the other hand, it is clear that the mayor and board of aldermen had full power and authority under the charter as amended to apportion the expense of paving to the abutting property owners and to the city by the plan adopted.

The power of the municipality to order special improvements is shown in the following, being the second paragraph of section 1 of chapter 260 of the Laws of 1912, now a part of the city's charter: "The mayor and board of aldermen of any municipality in this state shall have power, in their discretion, to require special improvements to be made on the whole or any part of any public street, avenue, lane or alley within the municipal limits; and the mayor and board of aldermen shall have the power to tax the cost of the special improvement on the property owners whose property adjoins any street, avenue, lane or alley, or any part thereof, ordered to be improved. The cost of the special improvement may be assessed against the adjoining owners in a manner to be hereinafter specified."

By the charter as amended the mayor and board of aldermen are given the powers to decide as to special improvement, to order same, and require the payment therefor in the manner provided. They are further, by

the provisions of the charter, made the judges, not only as to the necessity for the special improvement, but also whether or not the same should be paid for out of the general improvement fund, and whether or not there should be assessment against the property owners. Uniformity in the method is required. A special tax may be levied. Full provisions are made for all proceedings relative to the method of doing the work of paving, ascertaining the cost thereof, fixing the assessments against the property owners, the amount of which is to be determined by the board, fixing the time of payment, and providing for the collection of the amounts assessed. We see nothing in these provisions to prevent the city from making such an apportionment of the expense of paving as made by the plan adopted.

Practically the same method and apportionment of the expenses of paving a street adopted in this case is shown in the case of *Edwards House Company* v. *City of Jackson,* 91 Miss. 429, 45 So. 14. The court, in deciding that case, approved the method whereby the expense of paving was apportioned among the abutting property owners, the city and the street car company. The provisions of the law applicable to the question now before us were contained in the Code sections when the city of Jackson constructed the pavement involved in the above case, and they are substantially the same as those in chapter 260 of the Acts of 1912; now a part of the charter of the city of Grenada. We approve the decision in that case.

When the legislature in 1912 enacted the statute, chapter 260, which, now, as a part of the charter of Grenada, gives authority for the paving of streets, and the charging and collection of the expense therefor, it did so with full knowledge of the construction of the law as made in the Edwards House case.

The acts of the mayor and board of aldermen in providing the method of making the improvement, apportioning the cost, and issuing the bonds were clearly with-

in their power and authority.  We decide that "the city of Grenada has the right to pave the streets according to the plan adopted."

*Affirmed.*